IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jerry W. Nelson, ) | |
| ) | Civil Action No. 6:12-2066-JFA-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| South Carolina Department of ) | |
| Corrections, Wilson Simmons, and ) | |
| Charlie Turbide, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion to dismiss or, in the alternative, for summary judgment (doc. 20)  The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On June 11, 2012, the plaintiff commenced this action by filing his complaint in the Court of Common Pleas for the County of Berkeley, South Carolina.  The defendants removed the case to the United States District Court on July 23, 2013, based upon federal question jurisdiction.  On October 31, 2012, the defendants filed their motion to dismiss or, in the alternative, for summary judgment, along with supporting exhibits (doc. 20).  By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion to dismiss and summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The plaintiff filed a response in opposition on November 13, 2012, along with supporting exhibits

(doc. 24). On November 26, 2012, the defendants filed a reply (doc. 26). As the defendants and the plaintiff have presented matters outside the pleadings and these documents have not been excluded by the court, the motion to dismiss will be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(d).

## **FACTS PRESENTED**

The plaintiff is currently incarcerated in the South Carolina Department of Corrections ("SCDC") in the Special Management Unit ("SMU") of Lieber Correctional Institution in Ridgeville, South Carolina, serving 20 years for assault and battery with intent to kill. In his complaint, the plaintiff alleges that, while conducting a search for contraband in the SMU on July 1, 2011, defendants Simmons and Turbide made him take off his clothes and spread his buttocks prior to removing him - handcuffed and naked - from his cell. He further alleges they verbally harassed him (doc. 1-1 at p. 6). He alleges that he has suffered "physical injury and emotional distress" as a result of the officers' actions (*id.* at p. 12). He claims defendant Simmons forced him to open his "butt cheeks over thirteen times," which he claims was a sexual assault, while defendant Turbide placed his boot on his neck (*id.* at p. 6). He further alleges that defendant Simmons threatened him that if he did not abandon a grievance he had filed, Simmons would arrange for the plaintiff to be raped and killed (*id.* at p. 10). The plaintiff alleges violations of the Eighth Amendment and the South Carolina Tort Claims Act, and he seeks damages and injunctive relief.

The defendants submitted the affidavits of defendant Sergeant Wilson Simmons, defendant Sergeant Charlie Turbide, Sergeant Rhonda Robertson, and Investigator Merve Powell (docs. 20-1, 20-2, 20-3, 20-4). The search at issue in this case was conducted by the "Burgundy Team" consisting of approximately fifteen officers and led by Sergeant Robertson (doc. 20-3, Robertson aff.). Officer Simmons was the charging official for the Burgundy Team, providing institutional level support for the search and charging the inmates who were found in possession of contraband (doc. 20-1, Simmons

2

aff.). Sergeants Simmons and Turbide attest that on July 1, 2011, they attempted to search the plaintiff's cell, and, prior to doing so, the plaintiff was asked to follow the procedure for ensuring he had no weapons or other contraband on his person. The plaintiff did not initially comply with their orders, but eventually came to the cell flap, was handcuffed, and was escorted out of his cell so that the search could be conducted. Both officers aver that at no time did they treat the plaintiff inappropriately, threaten to harm him, or otherwise touch or inflict harm on the plaintiff. They further state that at all times the plaintiff was within earshot of other officers (doc. 20-1, Simmons aff.; doc. 20-2, Turbide aff.). While the plaintiff alleges that no contraband was found in his cell (doc. 1-1 at p. 9), the incident report states that "numerous violent pictures" were found in his cell, and the plaintiff was charged with threatening to inflict harm on an employee and possession of contraband (doc. 20-1, Simmons aff., ex. A). Sergeant Robertson avers that the search was conducted in accordance with the SCDC's procedure requiring a showing that an inmate is not holding contraband on his person or in any body cavity prior to leaving his cell (doc. 20-3, Robertson aff.). She further attests that the plaintiff was always within earshot of other officers, and if the plaintiff had been assaulted or otherwise harmed during the search, it could not have gone unnoticed by her. At no point did she witness the plaintiff being verbally or otherwise assaulted, battered, or offensively touched or harmed, and at no point during the search was an inmate pulled out of his cell naked (*id.*).

The plaintiff filed Step 1 and Step 2 grievances regarding the search on July 1, 2011,[1] and Merve Powell with the SCDC Department of Investigations investigated the plaintiff's claims. Investigator Powell states in his affidavit that SCDC policy mandates that

---

[1] In his Step 1 grievance, the plaintiff alleged that the defendants told him to bend over and "spread [his] ass cheeks several times" while they laughed and looked on. He further alleged that the defendants threatened to spray him with chemical munitions (doc. 24-1 at p. 2). Notably, these allegations are somewhat different than the allegations made by the plaintiff in his complaint in this case.

an SMU inmate be searched prior to his cell being searched, and this search includes a showing that an inmate is not holding contraband on his person or in any body cavity. After his investigation, "[o]ther than the discomfort from a properly conducted search [he] found no evidence nor received any report of the plaintiff suffering from any injury from the actions of Officers Simmons and Turbide on July 1, 2011" (doc. 20-4). He further attests that he is unaware of any violations of the plaintiff's constitutional rights (*id.*).

In response to the motion for summary judgment, the plaintiff submitted several statements of other inmates in the SMU (doc. 24-2). The first statement, from "Jermaine in cell 114," is not sworn nor signed under penalty of perjury[2] (doc. 24-2 at p. 2). Similarly, the second statement is unsigned from an anonymous inmate witness (*id.* at p. 3). In the third statement, which is "sworn by the penalty of perjury," inmate Christopher Lane states that Officer Simmons told the plaintiff to spread his buttocks apart more than once and "made the derogatory comment of 'look at that pretty fat ass.'" He goes on to state that Officer Simmons "allowed Nelson to get dressed pulled him out the room and shook down" (*id.* at p. 4). In the fourth statement, which also is not sworn nor signed under penalty of perjury, Darious L. Moore states that he saw Officer Simmons take some of the plaintiff's property and give the plaintiff "several evil stares" (*id.* at p. 5). The fifth statement is unsigned, but states that it is made by Terrance Griffin. The statement is not sworn nor made under penalty of perjury. The witness states that he heard Mr. Simmons tell the plaintiff to "bend over and spread his butt cheeks" multiple times and to "touch his ankles." The witness also claims that Officer Simmons demanded the plaintiff to shut up or he would be sprayed with chemical munitions (*id.* at p. 6). In another statement, also unsigned and purportedly made by Terrance Griffin, the witness states he saw Officer Turbine enter the

---

[2]"On summary judgment, unsworn declarations made under penalty of perjury that substantially conform to 28 U.S.C. § 1746 are admissible in lieu of sworn affidavits." *Watterson v. Wilinson*, No. 3:09–cv–394–RJC, 2012 WL 1067936, at *7 n. 2 (W.D.N.C. Mar. 29, 2012) (citing *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65–66 (2d Cir.1999)).

4

plaintiff's cell and throw some of the plaintiff's property from the top tier (*id.* at p. 7). The seventh statement, which is not sworn nor signed under penalty of perjury, pertains to alleged actions by Officer Turbide in September 2012, which are not at issue in this case (*id.* at p. 8). Lastly, the statement by Edward Elijah Barton is also not sworn nor signed under penalty of perjury. Mr. Barton states that on July 1, 2011, he heard Officer Turbide tell the plaintiff to "take off everything, lift up your nuts, and turn around and spread your ass cheeks, and cough for me." He claims he heard Officer Turbide tell the plaintiff to do this twice more. Mr. Barton states this was not "done in a professional manner whatsoever," and thus Officer Turbide is guilty of sexual harassment (*id.* at p. 9).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds by* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Eighth Amendment*

The plaintiff asserts that he was subjected to excessive force in violation of his Eight Amendment rights. The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The objective component focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). The objective component can be met by "the pain itself," even if the prisoner has no "enduring injury." *Williams*, 77 F.3d at 762 (internal quotation marks omitted). Regarding the subjective component, the key question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal quotation marks omitted); *see Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008).

The Fourth Circuit Court of Appeals applies the following factors when analyzing whether a prison official used force in good faith and not maliciously or

sadistically: (1) The need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321. In *Wilkins v. Gaddy*, the United States Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. 559 U.S. 34, 36-40 (2010) (citing *Hudson*, 503 U.S. 1, 4 (1992)). However, the Court noted that the absence of serious injury may be one factor to consider in the Eighth Amendment inquiry as it may suggest "'whether the use of force could plausibly have been thought necessary in a particular situation'" and may indicate the amount of force applied. *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7).

Body cavity searches of inmates are often necessary and are not violative of the Fourth or Eighth Amendments if reasonable and not motivated by a punitive intent. *Bell v. Wolfish*, 441 U.S. 520, 558-61 (1979). *See also Peckham v. Wisconsin Dep't of Corrections*, 141 F.3d 694 (7th Cir.1998) (strip searches constitutional absent evidence they were performed for purposes of harassment or punishment); *Franklin v. Lockhart*, 883 F.2d 654 (9th Cir.1989) (approving twice-a-day visual body cavity searches for inmates in disciplinary and administrative segregation); *Michenfelder v Sumner*, 860 F.2d 328, 332–333 (9th Cir.1988) (strip searches when entering and leaving cells not excessive even if prisoner escorted from one portion of a unit to the next); *Goff v. Nix*, 803 F.2d 358, 370–71 (8th Cir.1986) (visual body cavity search of segregation unit inmates before and after going to exercise area to prevent passage of contraband constitutional); *Campbell v. Miller*, 787 F.2d 217, 228 (7th Cir.1986) (permitting visual body cavity searches of high security inmates being transported to law library).

The plaintiff has failed to present sufficient evidence to show that the visual body cavity search at issue in this case was performed for any reason other than in response to security and safety concerns. The plaintiff is an inmate in the SMU where

inmates are subject to strip searches for weapons and contraband as a security measure. As described above, the statements submitted by the plaintiff in support of his opposition to the motion for summary judgment, to the extent they could even be considered,[3] do not support his claims. Each alleged statement gives varying details about the search of the plaintiff on July 1, 2011, and while some do allege hearing verbal threats, none of the inmates claim to have witnessed any physical contact between the defendant officers and the plaintiff. Inmate Christopher Lane, whose statement is the only one made "under the penalty of perjury," does not support the plaintiff's version of events. The plaintiff alleges at one point in his complaint that Officer Turbine "placed[ed] his boot upon my neck, holding my head down," while Officer Simmons "did this again and again ripping [his] buttocks open again non stop" and then ordered him out of his cell handcuffed and naked in front of other prisoners (doc. 1-1 at pp. 6-7). However, Inmate Lane states that Officer Simmons told the plaintiff to strip down, turn around to touch his ankles, and to "grab his ass cheeks and spread them." He claims Officer Simmons made a derogatory comment to the plaintiff, and then made the plaintiff do it again. According to Inmate Lane, Officer Simmons then told the plaintiff to get dressed and took him out of the cell so that the cell could be searched, confirming the affidavits of Sergeants Simmons, Turbide, and Robertson that no force was used on the plaintiff and that he was not pulled out of his cell naked (as the plaintiff alleged) (*see* docs. 20-1, 20-2, 20-3). Inmate Lane's statement also does not support the plaintiff's claim that defendant Simmons threatened him.

In addition, the Supreme Court also clearly stated in *Wilkins v. Gaddy* that the extent of injury is still relevant to the Eighth Amendment analysis as a factor to be considered as to whether the "use of force could plausibly have been thought necessary'

---

[3] "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993).

in a particular situation" and as a factor in determining the amount of force applied. *Wilkins*, 559 U.S. at 36. The Court still recognizes that "not every malevolent touch by a prison guard gives rise to a federal cause of action. An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id*. The plaintiff has not produced evidence of any type of discernible injury from the alleged incident.

Further, to the extent the plaintiff claims Sergeants Simmons and Turbide harassed him during the search, such conduct is, at most, analogous to verbal abuse by guards, which, without more, fails to state a claim. *See Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. 2003) (allegation that correctional officer laughed at prisoner during a strip search not actionable under § 1983)*; Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (disrespectful and assaultive comments did not violate Eighth Amendment); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979) (sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); *Faltas v. South Carolina*, C.A. No. 3:11-3077-TLW-SVH, 2012 WL 988105, at *6 (D.S.C. Jan. 27, 2012) ("While a threat of harm, combined with action designed to carry out the threat, may state a constitutional claim, . . . verbal threats or abuse, without more, are not actionable.") (citations omitted), *Report and Recommendation adopted by* 2012 WL 988083 (D.S.C. March 22, 2012); *Calhoun v. Vicari*, C.A. No. 05-4167, 2005 WL 2372870, at * 5 (D.N.J. Sept. 26, 2005) (holding that sexual gestures, jokes, and slap on the buttock not sufficiently serious to satisfy the objective component of an Eighth Amendment claim); *Morrison v. Martin*, 755 F.Supp. 683, 687 (E.D.N.C.1990) (subjection of a prisoner to verbal abuse and mere threatening language and gestures did not rise to the level of a constitutional deprivation); *Lamb v. Hutto*, 467 F.Supp. 562, 568 (E.D. Va.1979) (verbal assaults and threats do not state a constitutional claim actionable under § 1983).

Based upon the foregoing, the plaintiff has failed to establish a claim against Officers Simmons and Turbide for violation of his Eighth Amendment rights. *See Reed v. Olson*, C.A. No. 4:09-3126-JFA-TER, 2011 WL 765559, at *7-8 (D.S.C. Jan. 19, 2011) (recommending that summary judgment be granted on SMU inmate's claim that body cavity search violated his 8th Amendment rights), *Report and Recommendation adopted by* 2011 WL 742509 (D.S.C. Feb. 24, 2011).

### *Qualified Immunity*

The defendants in their individual capacities are entitled to qualified immunity from civil damages, as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as the plaintiff has failed to show that the defendants violated any of his clearly established constitutional or statutory rights.

### *Respondeat Superior*

To the extent the plaintiff seeks to hold defendant SCDC and thus the Warden liable in a supervisory capacity, the doctrine of respondeat superior generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The plaintiff has failed to make the required showing here.

### *State Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise

supplemental jurisdiction over any claims for relief asserted pursuant to state law, including the South Carolina Tort Claims Act. *See* 28 U.S.C. § 1367(c)(3). *See also Johnson v. Ozmint*, 456 F.Supp.2d 688, 698 (D.S.C. 2006) (granting summary judgment to defendants on federal claims and remanding claims under South Carolina Tort Claims Act to state court).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 20) be granted.  Should the district court adopt this recommendation, any pending nondispositive motions will be rendered moot.

IT IS SO RECOMMENDED.


July 29, 2013                                                                           s/ Kevin F. McDonald
Greenville, South Carolina                                              United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).